**STATE of Tennessee, Appellee,**

v.

**Julian Kent WILLIAMS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 3, 1995.

Permission to Appeal Denied Jan. 16, 1996.

---

Leslie S. Hale, Assistant Public Defender, Stephen M. Wallace, District Public Defender, of counsel, Blountville, TN, for appellant.

Charles W. Burson, Attorney General & Reporter, Amy L. Tarkington, Assistant Attorney General, Nashville, TN, H. Greeley Wells, Jr., District Attorney General, Edward E. Wilson, Assistant District Attorney General, Blountville, TN, for appellee.

## OPINION

JONES, Judge.

The appellant, Julian Kent Williams, was convicted of custodial interference,[1] a Class A misdemeanor, by a jury of his peers. The trial court sentenced the appellant to pay a fine of $500 and serve eleven months and twenty-nine days in the Sullivan County Jail.

Three issues are presented for review:

I. The trial court erred in denying appellant sentencing alternative to incarceration.

II. Course and conduct of trial deprived appellant of a fair trial.

III. The evidence was insufficient to sustain appellant's conviction.

The judgment of the trial court is affirmed.

1. Tenn.Code Ann. § 39–13–306(a).

On August 27, 1992, the marriage of Deborah P. Williams and the appellant was dissolved by a decree of divorce in the Chancery Court of Sullivan County. Ms. Williams was awarded custody of the parties' child, Lindsey Rebecca Kaitlin Williams. The final decree states in part:

2. That the exclusive control and custody of the parties' minor child ... is awarded to the plaintiff [Deborah Jean Perry Williams].

3. That defendant, Julian Kent Williams, shall have visitation with the parties' minor child beginning Friday, August 21, 1992 at 5:00 P.M. and extending until Sunday, August 23, 1992 at 5:00 P.M. and every other weekend after this first weekend. Defendant shall exercise one weekend of visitation in Kingsport, Tennessee, and may exercise his visitation on the subsequent weekend in Norris, Tennessee along with the intervening petitioners [the paternal grandparents]. A visitation schedule for summers and holidays is hereby reserved by the court until [a] further time. Nothing in this order shall restrain the parties from making an agreement on their own concerning summer and holiday visitation.

On Friday, February 5, 1993, the appellant exercised his visitation rights. Ms. Williams delivered her daughter, then four years of age, to the appellant at the designated time and place, the Wal–Mart store located in the Colonial Heights area of Kingsport. The appellant was to return the child to Ms. Williams on Sunday, February 7, 1993, at 5:00 p.m.

Ms. Williams arrived at the Wal–Mart store on Sunday at 5:00 p.m. When the appellant did not appear after the passage of a reasonable period, Ms. Williams went to her home to see if the appellant had left a message on her answering machine. There were no messages. Ms. Williams returned to the Wal–Mart store and waited until 6:15 p.m. The appellant did not appear with the child. Thereafter, Ms. Williams returned to her home and called the Sullivan County Sheriff's Department.

Sergeant Joe Miller was dispatched to Ms. Williams's residence. He called the appellant from Ms. Williams's home. When the appellant came to the telephone, he identified himself as the appellant. While Sergeant Miller was advising the appellant why he was calling, the appellant told Sergeant Miller that he apparently had the wrong number and terminated the conversation. Sergeant Miller then called the Norris Police Department. The officer who answered the telephone advised Sergeant Miller that he knew the appellant and he would have the appellant call Sergeant Miller. The appellant called Sergeant Miller shortly after the call to the Norris Police Department was terminated.

The safety and well-being of the child was the main concern of both Ms. Williams and Sergeant Miller. The appellant advised Sergeant Miller that the child was "fine." The appellant permitted Ms. Williams to talk to her daughter. Sergeant Miller then instructed the appellant that he was required to obey the decree entered by the Chancery Court, and he directed the appellant to return the child immediately. The appellant refused to return the child that night. However, he agreed to surrender the child the following day, Monday, February 8, 1993, at the Norris Police Department.

Ms. Williams went to Norris, Anderson County, Tennessee, and, per the agreement with the appellant, went to the Norris Police Department to obtain her child. The appellant was not present, the child was not present, and neither the appellant nor the child could be found. Ms. Williams conferred with her attorney in Kingsport. She then returned to Sullivan County.

Law enforcement efforts to obtain the return of the child failed. On February 16, 1993, an arrest warrant, charging the offense of custodial interference, was issued for the appellant's arrest. The warrant was executed by a Roane County deputy sheriff at 6:47

p.m., on February 16th, at the appellant's place of employment in Kingston, Tennessee. Ms. Williams travelled to Roane County, obtained custody of her daughter, and returned to her Sullivan County home. The appellant was subsequently transported to Sullivan County by law enforcement officers.

The appellant testified in support of his defense. He stated that he arrived at the Wal-Mart store in Colonial Heights on Sunday, February 7, 1993, at 4:15 p.m. When Ms. Williams did not show, he left at 5:30 p.m. with the child. He apparently returned to Norris, Tennessee, where his parents lived.

He admitted that he agreed to return the child to Ms. Williams at the Norris Police Department on Monday, February 8th, but changed his mind either later that night or the following morning. Instead, the appellant went to the Department of Human Services office in Clinton, Tennessee, the county seat of Anderson County, and talked with a child abuse counselor. The appellant told the counselor that the child said Ms. Williams had left her alone without supervision while Ms. Williams was at her place of employment.[2] He asked the investigator if he could leave the child in her custody until the child could be returned to Ms. Williams. The child abuse investigator referred the appellant's complaint to the Sullivan County office of the Department of Human Services. However, she told the appellant that it was against department policy to take custody of a child without a court order. She also told the appellant that Ms. Williams was entitled to the custody of the child, that he should return the child to Ms. Williams in Sullivan County, or that he should make arrangements for Ms. Williams to meet him in Anderson County and let Ms. Williams take custody of the child.

The appellant testified that he did not return the child because he was "scared to death" for his daughter. His fear was asso-

2. Ms. Williams testified that her mother took care of the child when she worked. She did not

leave the child at home while she was at work.

ciated with the alleged complaint that Ms. Williams had left the child at home while she was at her place of employment. He also claimed at the sentencing hearing that the child needed medical attention. It appears that the child had a cold and had developed a rash. Ms. Williams had provided the appellant with medication for the cold. The doctor who saw the child did not treat the rash.

### I.

The appellant contends that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he is guilty of custodial interference beyond a reasonable doubt. He argues that he voluntarily returned the child before the issuance of an arrest warrant, which is an absolute defense to custodial interference. Tenn.Code Ann. § 39–13–306(b). He also argues that he did not possess the requisite mental state to commit this offense.

### A.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes,* 803 S.W.2d 250, 253 (Tenn.Crim. App.), *per. app. denied* (Tenn.1990).

■ In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ Questions concerning the credibility of the witnesses, the weight and value to be given to the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage,* 571 S.W.2d at 835. In *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the appellant has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *State v. Jenkins,* 733 S.W.2d 528, 530 (Tenn.Crim. App.1987).

### B.

Before the appellant could be convicted of custodial interference *in this case,* the state was required to prove beyond a reasonable doubt that (a) the appellant was the natural father of the child, (b) the child was under the age of eighteen, (c) the appellant knowingly detained the child, and (d) the appellant knew that the detention of the child violated "a temporary or permanent judgment or court order regarding the child's . . . custody or care." Tenn.Code Ann. § 39–13–306(a). The evidence is sufficient to support the jury's verdict that each element had been proven beyond a reasonable doubt.

■ It is undisputed that the appellant is the natural father of the child. The child was four years of age when the offense occurred. The appellant retained custody of the child from February 7, 1993 through February 16, 1993, when he was taken into custody by a Roane County deputy sheriff. There was a decree of the Chancery Court of Sullivan County that controlled the appellant's visitation rights. The only question is whether the appellant "knowingly" retained the custody of the child and "knowingly" violated the terms of the decree.

The jury found beyond a reasonable doubt that the appellant "knowingly" detained the child to prevent Ms. Williams from exercising the custody rights awarded by the decree. The jury accredited Ms. Williams's testimony that the appellant did not return the child to Kingsport at 5:00 p.m. on February 7, 1993; and the jury rejected the testimony of the appellant that he did return the child to Kingsport at the designated place and time. That was the prerogative of the jury. There was additional evidence that established the appellant "knowingly" detained the child: (a) he refused to return the child to Kingsport on the evening of February 7, 1993, after being directed to do so by Sergeant Joe Miller; (b) he agreed to deliver the child to Ms. Williams on Monday, February 8, 1993 at the Norris Police Department, but changed his mind without advising Ms. Williams or the Sullivan County Sheriff's Department; (c) he refused to return the child after being told by the child abuse counselor that the child should be returned to the mother; and (d) he removed the child to Roane County when the decree said that one visitation period was to be in Kingsport and the other visitation period could be in Norris, Tennessee. Moreover, the jury could have deemed the removal of the child to Roane County as an attempt to hide the child from Ms. Williams and law enforcement officers.

The appellant was vividly aware that a decree of divorce had been entered controlling custody of the child. It is undisputed that he was aware of the provisions governing his visitation rights. The jury was justified in finding that the appellant "knowingly" violated the terms of the decree based upon the same facts hereinabove set forth.

## C.

■ The appellant argues he voluntarily returned the child before the issuance of an arrest warrant or his arrest. As the appellant states in his brief, "[i]t is a defense to custodial interference that the individual detained ... in contravention of the order of custody ... was returned by the defendant voluntarily and before arrest or the issuance of a warrant for arrest." Tenn.Code Ann. § 39–13–306(b). The jury was justified in finding that this defense was not established by the evidence.

The appellant's argument is predicated upon the state's failure to prove that the arrest warrant was issued before the appellant surrendered the child at the Roane County Sheriff's Department. He theorizes the deputy sheriff's statement that there was a "pickup order" for him indicates the deputy sheriff was executing the chancellor's decree directing authorities to take the appellant and the child into custody. Of course, this argument defies the law of arrest as well as the fact the Roane County deputy sheriff endorsed on the face of the Sullivan County arrest warrant that it was executed at 6:47 p.m. by taking the appellant into custody.

The Sullivan County Sheriff's Department did not know the geographical location of the appellant or the child. When the sheriff's department obtained information that the appellant could be located in Roane County, the Roane County Sheriff's Department was notified. As previously stated, the Roane County deputy sheriff went to the appellant's place of employment and executed the arrest warrant.

■ The appellant ignores the fact that neither the Sullivan County Sheriff's Department nor the Roane County Sheriff's Department needed an arrest warrant to take the appellant into custody. Custodial interfer-

ence is a felony.[3] A law enforcement officer may make a warrantless arrest "[w]hen the person has committed a felony, though not in the officer's presence," and "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn.Code Ann. § 40–7–103(a)(2) and -(a)(3) (Supp. 1994). The information justifying a warrantless arrest may be furnished by another law enforcement officer. *State v. Burton,* 751 S.W.2d 440, 446 (Tenn.Crim.App.), *per. app. denied* (Tenn.1988).

■ A statement made by a law enforcement officer concerning an arrest will not, standing alone, convert a legal arrest into an illegal arrest. As this Court said in *State v. Robinson,* 622 S.W.2d 62, 68 (Tenn.Crim. App.1980), *cert. denied,* 454 U.S. 1096, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981): "[A]n arrest is not rendered unlawful by the fact that an officer who has authority to make an arrest for a particular offense erroneously states he is making an arrest for some other offense, or even for a cause which is not in fact an offense, or states the offense inaccurately." *See also State v. McAdams,* 640 S.W.2d 49, 50 (Tenn.Crim.App.), *per. app. denied* (Tenn.1982); *State v. Duer,* 616 S.W.2d 614, 615–16 (Tenn.Crim.App.), *per. app. denied* (Tenn.1981).

■ The Roane County deputy sheriff arrested the appellant, and the appellant knew that he was being arrested. The deputy required the appellant and the child to accompany her to the Roane County Sheriff's Department. The appellant asked the deputy not to handcuff him in the presence of his daughter. The deputy was considerate and understanding. She permitted the appellant to drive his car and have the child accompany him. However, he was required to follow the deputy sheriff. The deputy executed the Sullivan County warrant at 6:47 p.m. on the evening of February 16th. The appellant's testimony establishes that he was subjected to the control of and the will of the deputy sheriff from the time the deputy arrived at his place of employment until he was transported to Sullivan County. An arrest is defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on [the person], or by any act which indicates an intention to take [the person] into custody and subjects the person arrested to the actual control and will of the person making the arrest." *West v. State,* 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968) (citations omitted); *Robertson v. State,* 184 Tenn. 277, 284, 198 S.W.2d 633, 635–636 (1947) (citations omitted).

In summary, the appellant did not "voluntarily and before arrest or the issuance of a warrant for arrest" return the child to Ms. Williams. The appellant still had the child in his custody when he was arrested by the Roane County deputy sheriff. Thus, the evidence is clearly sufficient to support a finding by a rational trier of fact that the appellant was guilty of custodial interference beyond a reasonable doubt. Tenn.R.App.P. 13(e); *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

This issue is without merit.

## II.

■ The appellant contends that the "course and conduct of [the] trial deprived [the] appellant of a fair trial." The argument made in support of this issue appears to address seven (7) separate and distinct issues. However, it is impossible for this Court to determine the precise issues raised. The issues are not separated or subdivided. The arguments made in support of the respective errors are disjointed, and it is impossible to determine when one argument ends and the next argument begins. As the Court of Appeals said in *Tortorich v. Erickson,* 675 S.W.2d 190, 191 (Tenn.App.), *per. app. denied* (Tenn.1984): "To answer such a query requires a degree of clairvoyance with which this Court is not possessed."

The appellate courts of this state have addressed the nature and sufficiency of is-

---

**3.** The arrest warrant alleged the felony offense for custodial interference.

sues on several different occasions. *See, e.g., State v. Matthews*, 805 S.W.2d 776, 778–779 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1990); *State v. Dykes*, 803 S.W.2d 250, 254–255 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990); *State v. Draper*, 800 S.W.2d 489, 498–500 (Tenn.Crim.App.1990); *Harvey v. State*, 749 S.W.2d 478, 479–80 (Tenn.Crim. App.1987), *per. app. denied* (Tenn.1988); *State v. Newsome*, 744 S.W.2d 911, 914 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1987); *Leeson v. Chernau*, 734 S.W.2d 634, 637 (Tenn.Ct.App.), *per. app. denied* (Tenn. 1987); *Tortorich*, 675 S.W.2d at 191. However, it is apparent from reading literally hundreds of briefs that these opinions have fallen upon deaf ears. Nevertheless, the Court will again address this issue due to its importance.

The issues presented for review constitute the backbone of an appeal. If an issue is not properly drafted, the attorney preparing the appellant's brief cannot properly research or argue the merits of the issue. The attorney preparing the appellee's brief will entertain doubt as to the precise issue that is to be addressed or will restate the correct issue supported by the record. The judges who must resolve the merits of the issue will not be able to determine the precise issue to be addressed.[4] Thus, properly drafted issues will assist the writer of the appellant's brief, the writer of the appellee's brief, the panel of appellate judges who are assigned the responsibility of addressing the issues in an opinion, and the staff of each appellate judge.

 Issues are persuasively worded legal conclusions. Each issue should apply a rule of law to relevant facts and relate the conclusion that the party wants the appellate court to reach. When an issue is properly drafted, the appellate court can use the issue as a holding sentence in its opinion. An issue should be stated in one, complete sentence. Myron Moskovitz, *Winning an Appeal* § 3.2 at 19 (Revised ed. 1985). If the issue is divided into sub-issues, each sub-issue should consist of one complete sentence. While an issue should be stated in clear and succinct language, it should be as specific and certain as the nature of the error will permit without being either argumentative or repetitious. *See Dykes*, 803 S.W.2d at 255; *Newsome*, 744 S.W.2d at 914; Squires & Rombauer, *supra*, § 7.3 at 167–69 (citing U.S.Sup.Ct.Rules 15.1(a), 21.1(a), and 34.1(a)); Henry Weihofen, *Legal Writing Style* 246–58 (2nd ed. 1980). Conclusory issues, such as the issue in this case, are not permitted by Rule 27(a)(4), Tenn.R.App.P., and should be avoided. *See Newsome*, 744 S.W.2d at 914; Squires & Rombauer, *supra*, § 7.3 at 169–70.

 A separate issue should be presented for each error raised in the appellate court. *See Leeson*, 734 S.W.2d at 637. Parties should refrain from incorporating several separate and distinct errors into a single issue. *Leeson*, 734 S.W.2d at 637.[5] On occasion, an advocate's ability to clearly articulate the position of a client will require that the argument be subdivided into two or more sub-issues. A sub-issue is a statement which supports the basic issue presented for review. "The purpose of subdividing issues is to break them up into shorter sections which are easier for the reader to digest." Moskovitz, *supra*, § 3.2 at 22. In short, the sub-issues must be directly related and constitute parts of the main issue presented for review.

---

4. "From the viewpoint of [appellate] judges, the function of [issues presented for review] is to provide a quick picture of a case about which they know nothing." Lynn B. Squires & Marjorie D. Rombauer, *Legal Writing in a Nutshell* § 7.3 at 167 (1982). Thus, if the issues presented for review are not properly drafted, an appellate court judge will not know what to look for while reading the transcript of the proceedings.

5. In *Leeson*, the appellant presented one issue for review: "Did the Trial Court err in dismissing the plaintiffs' action prior to trial?" However, the appellant asserted and argued several errors they contended entitled them to relief from the judgment of the trial court. The Court of Appeals condemned this practice, saying: "T.R.A.P. does not contemplate that an appellant may submit one blanket issue as to the correctness of the judgment and thereby open the door to argument upon various issues which might affect the correctness of the judgment." 734 S.W.2d at 637.

This issue has been waived. It is too broad in scope. *Villers v. State,* 833 S.W.2d 98, 99 n. 1 (Tenn.Crim.App.), *per. app. denied* (Tenn.1992) ("[w]hether the [trial court] erred in setting aside the defendant's guilty plea" held to be too broad in scope); *Matthews,* 805 S.W.2d at 778 ("the evidence was insufficient to sustain the verdict of the jury" held to be too broad in scope); *Dykes,* 803 S.W.2d at 255 ("[t]he Court erred in overruling his Motion to Dismiss" held to be too broad in scope); *Draper,* 800 S.W.2d at 499. It is also vague and conclusory in nature. *Newsome,* 744 S.W.2d at 914; *Leeson,* 734 S.W.2d at 637. Nevertheless, this Court has considered the errors argued in this issue and finds that each error that can be deciphered is without merit.

The evidence excluded by the trial court was not relevant to the issues that the jury was required to decide. Tenn.R.Evid. 401. Also, the trial court did not abuse its discretion by refusing to instruct the jury on the defense of necessity. *See* Tenn.Code Ann. § 39–11–609. This defense was not fairly raised by the evidence. Moreover, if the evidence that appellant sought to introduce had been presented to the jury, this evidence would not have supported a necessity defense.

This issue is without merit.

## III.

The appellant challenges the manner in which he is required to serve the sentence imposed by the trial court. He contends that the trial court abused its discretion by not imposing an alternative sentence to incarceration.

■ When an accused challenges the manner of serving a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Smith,* 891 S.W.2d 922, 929 (Tenn.Crim.App.), *per. app. denied* (Tenn.1994); *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn.Crim.App.1993).

■ Contrary to the appellant's assertion, he is not entitled to the statutory presumption regarding alternative sentencing. Tenn.Code Ann. § 40–35–102(6) (1990). The presumption is limited in scope to an accused who is convicted of a Class C, D or E felony. It does not apply to an accused convicted of a misdemeanor. *State v. Creasy,* 885 S.W.2d 829, 832–33 (Tenn.Crim.App.), *per. app. denied* (Tenn.1994).

■ When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn.Code Ann. § 40–35–401 (1990); *Ashby,* 823 S.W.2d at 169; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim. App.1991). In this case, the appellant has failed to establish that the sentence imposed was erroneous.

The record reflects that the custody of the child in question was a focal point of litigation between the appellant and Ms. Williams. The appellant took the child to several doctors in an attempt to establish that Ms. Williams had been guilty of child abuse. These efforts failed. In addition, the appellant made numerous complaints to the Department of Human Services regarding Ms. Williams's treatment of the child. On each occasion, the Department of Human Services conducted an investigation. Again, there was no evidence of child abuse. There were numerous court appearances associated with the custody of the child following the divorce.

The trial court found that the appellant had "contempt" for the judicial process, and

he continually defied the chancellor's orders in the divorce proceeding. The court further found that the appellant knew "how to manipulate the system," and "he stretch[ed] everything to suit himself." The appellant testified that he knew the civil process, what the chancellor had done in the past, and what he thought might occur if he maintained custody of his daughter in violation of the chancellor's decree. It is obvious that the appellant believed the chancellor would not take punitive civil action against him. However, he did not take into consideration the criminal nature of his conduct.

The appellant was in touch with his attorney the entire time he had custody of his daughter. His attorney advised him that the chancellor wanted to see him in chambers before the arrest warrant was issued. The appellant failed to appear. It appears that he blames his attorney for his conviction. He complained at the sentencing hearing that his attorney never told him that his conduct constituted a crime.

The trial court noted that the appellant would continue to defy the orders of the chancellor and make a concerted effort to manipulate the system if he was not punished. Unfortunately, the record makes it clear that the appellant cannot be rehabilitated. It is apparent that the appellant has a problem with discipline and demands that he have his way. This is the reason why he has defied the orders of the chancellor and attempted to manipulate the system.

The appellant attended the University of Tennessee. His academic record was exceptionally poor. He then enrolled at Maryville College. Again, his academic record was exceptionally poor. He lost an excellent position with the United States Postal Service. His employer gave him the option of resigning or being terminated. His immediate supervisor stated that the appellant was a problem employee. He had a bad attendance record, a terrible temper, he attempted to "bully" fellow employees, and made numerous statements that were later determined to be false. On one occasion, he came to work under the influence of "something," and was barely able to stand.

On July 30, 1990, the appellant initiated treatment for an "intermittent explosive disorder." The appellant reported a "history of violent, explosive behavior involving yelling and breaking objects in his home." He threatened to commit suicide on several occasions. He never struck or assaulted Ms. Williams or the child.

The appellant describes himself as a recovering alcoholic. He has been convicted of public drunkenness, driving while under the influence, reckless driving, and carrying a dangerous weapon. However, he did not seek assistance for his condition until October 27, 1993, more than eight months after he committed the offense in question. He was treated for "polysubstance abuse, severe." He had an addiction to alcohol, cocaine and xanax.

When the appellant committed the offense in question, he was working for his parents. They furnished him a home, a telephone, his utilities, and a salary of $400. He seems content with his status in life. While he stated he was paying $300 in child support each month, Ms. Williams stated that the appellant had not paid any support following his conviction.

The appellant never expressed any remorse for the crime that he committed. Most of his testimony at the sentencing hearing was an apparent effort to establish mitigation. The jury rejected most of this testimony.

This Court agrees with the reasoning of the trial court in denying the appellant's request for probation. Given the appellant's prior conduct and view toward court orders, it is highly unlikely that the appellant would abide by the conditions that would be imposed if his sentence was suspended. His rehabilitation prospects are highly suspect. Tenn.Code Ann. § 40–35–102(5). Moreover, there is a definite need to effectively deter the appellant from manipulating the judicial system and attempting to see how far he can

press an issue without being punished for his conduct. Tenn.Code Ann. § 40–35–103(1)(B). Confinement is also necessary to avoid depreciating the seriousness of custodial interference as an offense. Tenn.Code Ann. § 40–35–103(1)(B).

WELLES and BARKER, JJ., concur.