# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1998

FILED

March 17, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9701-CR-00012** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **DAVIDSON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. J. RANDALL WYATT, JR.** |
| **FRANKLIN W. CAMPBELL,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Sentencing) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:

DEANNA BELL JOHNSON
211 Third Avenue North
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

GEORGIA BLYTHE FELNER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

STEVE DOZIER
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED AS MODIFIED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Franklin W. Campbell, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He pleaded guilty to one count of simple robbery and was sentenced as a standard, Range I offender to six years of incarceration. The trial court denied probation and community corrections. The Defendant now appeals his sentence and argues that the trial court erred by sentencing him to the maximum sentence and for denying him an alternative to incarceration. We affirm the judgment of the trial court ordering the Defendant to serve his sentence in confinement but modify the length of the sentence to five years.

In September of 1995, the Defendant became acquainted with Christina Marie Gribbin, who he knew was a prostitute. The Defendant allowed Gribbin to stay at his apartment with him. The Defendant is a transsexual and dresses as a woman. Gribbin asked the Defendant on occasions to accompany her while she worked, and he had sat in the car while she went inside a man's house on at least one occasion. On September 18, 1995, Gribbin asked the Defendant to ride in her car with her while she went to get some money. The Defendant denied that he knew that she intended to commit a robbery.

The Defendant was drinking alcohol and using Valium that day. He rode with Gribbin to an ATM in Madison, Tennessee. Patricia Campbell, the victim in this case, withdrew cash from the machine and then drove four miles to the Chestnut Villa Apartments on Due West Avenue. Gribbin and the Defendant first

observed the victim at the ATM, then followed her to the apartment complex. The victim's three grandchildren, ages four, five, and six, were with her. Gribbin got out of her vehicle, went to the victim as she exited her car, and held a knife to her throat. Gribbin said: "Give me your purse or I will kill you." The Defendant was yelling from Gribbin's car, "Hurry up!" Gribbin grabbed the victim's purse and fled in her vehicle, a maroon Ford Escort. The victim stated that the passenger in the vehicle was a white female.

The police were called and a description of the robbers was broadcast. Shortly thereafter, Gribbin and the Defendant were apprehended in a maroon Escort at Gallatin Road and Stratford Avenue. The officers found the victim's purse sitting on the Defendant's lap, and found the knife used in the robbery and the victim's ATM card under the driver's seat. The victim identified Gribbin and the Defendant as the persons who had robbed her.

Gribbin and the Defendant were charged with aggravated robbery, and the Defendant pleaded guilty to simple robbery. See Tenn. Code Ann. § 39-13-402; Tenn. Code Ann. § 39-13-401. The trial judge sentenced him to six years imprisonment. After conducting a hearing on August 1, 1996, the trial judge denied the Defendant's request to serve his sentence on probation or in community corrections. The Defendant now appeals, contending that the length of his sentence is excessive and that the trial court erred by denying probation

or community corrections. Although these issues may be somewhat moot, we nonetheless consider them on the merits.[1]

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a <u>de</u> <u>novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; <u>see</u> <u>State v. Smith</u>, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and

---

[1]We note that the Defendant received pre-sentence jail credit and was incarcerated during the initial pendency of this appeal. According to Department of Correction records the Defendant was paroled on October 24, 1997. The Department's records further reflect that a parole violation warrant was issued on November 10, 1997, and was served on the Defendant on February 20, 1998.

that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

We believe the record is clear that the trial court failed to properly consider the statutory sentencing principles and state them on the record. In imposing the sentence, the trial court referred to the fact that the Defendant had prior convictions, but did not further elaborate his sentencing decision other than to state that to even "think about" putting the Defedant on probation was "absolutely ridiculous." Therefore, we must we conduct a de novo review of the Defendant's sentence. The presentence report reflects that the Defendant was thirty-five at the time of sentencing, divorced, with an eight-year-old daughter. He had not held steady employment for the past five years, but had worked as a female impersonator on a sporadic basis. He was currently a transsexual and was taking female hormones . He stated that he had a prescription drug addiction that began when he was a teenager. He had used Valium, pain pills, and alcohol, and binged on cocaine every couple of months. He stated that he has had drug and alcohol treatment, as well as several psychiatric hospitalizations. The Defendant's prior convictions include the unlawful sale of liquor, two DUIs, driving without a license, and shoplifting.

Patricia Campbell completed a victim impact statement in which she stated that she has had insomnia, headaches and recurring fear because of the crime. She missed twenty days of work. Her grandchildren have continued to ask why the crime occurred and have had nightmares about "nanny" being killed. The victim received some counseling regarding the offense.

Pamela Warden testified at the sentencing hearing that she would provide the Defendant a place to live and allow him to work for her as a housekeeper. She had known the Defendant for years and stated that her children liked him well. The Defendant testified that, at the time of the robbery, he had a recent breakup, had only known Gribbin for a few days, and had just been released from a psychiatric hospital the week before. The Defendant testified regarding his sex-change process and his concerns about being incarcerated. He stated that he was currently in the Davidson County Criminal Justice Center in the Special Needs Facility. He testified that he could not go to the gym for fear of other inmates, and that two men nearly forced him to perform oral sex. He denied that he knew about the robbery in advance and stated that he felt remorseful about the crime. The Defendant admitted that he fled to Florida when his last sentencing hearing was scheduled, but returned and turned himself in. He initially denied a prior criminal record, but then admitted he had lied and that he had two DUIs.

Darwin Mitchell, an employee from a Davidson County correctional facility, testified that the Defendant could be housed in the Special Management area. The inmates there are locked down for twenty-two hours and are out for two hours, five days per week. Some cells house two persons, the others hold only one. Inmates who request special protection may be housed there. Mitchell did not know of any inmates there who were transsexuals. The Special Needs unit provides care for those with medical problems. The inmates are out of their cells eight hours a day. Mitchell suggested that the Special Management segregation unit would be appropriate for the Defendant.

The Defendant argues that appropriate mitigating circumstances in this case are (a) That he played a minor role in the commission of the offense; and (b)that he was under great stress and the influence of drugs and alcohol when the crime was committed. Tenn. Code Ann. § 40-35-113(4), (3). We find the argument for the application of factor (3) unconvincing. As for factor (4), one could consider that the Defendant remained in the car and did not actually physically perform the act that constituted the aggravated robbery. However, the evidence also shows that the Defendant yelled "Hurry up!" to his accomplice as she robbed the victim. Moreover, when the Defendant was captured, he was holding the victim's purse. The circumstances suggest that the Defendant was intimately involved with the crime and we cannot conclude that it would be appropriate to apply factor (4).

The State proposes the application of three enhancement factors: (a) That the Defendant has previous history of criminal convictions; (b) that the Defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense; and (c) that the Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (9), (10).

The record is clear that the Defendant has had several prior criminal convictions. Therefore, the application of this enhancement factor is appropriate. Next, the State argues that factor (9), that the Defendant employed a weapon during the offense, should be applied. While it is true that a weapon was employed by his accomplice during the commission of the offense, there is no evidence that the "*defendant* possessed or employed" the knife. Tenn. Code

Ann. § 40-35-114(9). As a result, factor (9) should not be applied. Finally, the State contends that factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, may be applied in this case. We agree. Here, the Defendant and his cohort covertly observed, then followed the victim several miles to an apartment complex. In broad daylight, the Defendant urged on Ms. Gribbin to perpetrate the robbery using a knife, which she held to the victim's throat. Moreover, the victim's young grandchildren were present and were also at risk of being harmed during the commission of the crime. The Defendant was convicted of simple robbery, thus, factor (10) is not precluded as being an element of the offense. See State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993). Therefore, factor (10) may be applied.

The sentence range for a Range I offender for robbery, a Class C felony, is three (3) to (6) years. Tenn. Code Ann. § 40-35-101. While we recognize the seriousness of the offense committed, our de novo review of the record leads us to conclude that a sentence in the upper end of the range is warranted, but that the circumstances do not merit the maximum sentence in the range. From our de novo review and in consideration of enhancement factors (1) and (10), we modify the Defendant's sentence to five (5) years.

Next, the Defendant argues that the trial court erred by denying probation or community corrections. Although probation "must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) (1990) (Sentencing Commission Comments). This Court must begin its sentencing determination by reviewing the purposes of sentencing set forth in Tennessee

Code Annotated section 40-35-102. State v. Davis, 940 S.W.2d 558,559 (Tenn. 1997).

If an accused has been convicted of a Class C, D or E felony and sentenced as an especially mitigated or standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tennessee Code Annotated section 40-35-102 provides in part:

> (5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and
>
> (6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption. Ashby, 823 S.W.2d at 169. As our supreme court said in Ashby: "If [the] determination is favorable to the defendant, the trial court must presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." Id. "Evidence to the contrary" may be found in applying the considerations that govern sentences involving

confinement, which are set forth in Tennessee Code Annotated section 40-35-103(1):

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

In the case at bar, the Defendant was convicted of the Class C felony of robbery, for which he is presumptively entitled to an alternative sentence. However, the record reflects that the trial judge was concerned with the Defendant's focus on his problems and a lack of consideration for the victim. Apparently, the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense.

The potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he should be granted an alternative sentence. Tenn. Code Ann. § 40-35-103(5). The record reflects that the Defendant failed to appear at his first sentencing hearing because he fled to Florida. Although he did return to Tennessee, this behavior would certainly be sufficient to undermine the trial court's confidence in the Defendant's ability to abide by the terms of an alternative sentence. See State v. Williams, 914 S.W.2d 940, 950 (Tenn. Crim. App. 1995). Although Ms. Warden offered the Defendant a place to work and live, the Defendant has had an unstable work history in the

past and has had a long history of drug abuse and psychiatric problems that have not abated with treatment. Finally, the Defendant demonstrated a lack of candor while testifying at the sentencing hearing. The Defendant's lack of credibility and unwillingness to accept responsibility for his crime reflect adversely on his rehabilitation potential. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). In light of the evidence in the record, we cannot conclude that the trial court erred by ordering the Defendant to serve his sentence in confinement.

The Community Corrections Act allows certain eligible offenders to participate in community-based alternatives to incarceration. Tenn. Code Ann. § 40-36-103. A defendant must first be a suitable candidate for alternative sentencing. If so, a defendant is then eligible for participation in a community corrections program if he also satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a). Because the Defendant has failed to establish that he is a qualified candidate for alternative sentencing, he is not eligible for community corrections.

Accordingly, we affirm the judgment of the trial court ordering the Defendant to serve his sentence in confinement, but modify the sentence to five years. This case is remanded to the trial court for entry of an order consistent with this opinion.

_____
DAVID H. WELLES, JUDGE

CONCUR:

-12-

_____
JERRY L. SMITH, JUDGE


_____
THOMAS T. WOODALL, JUDGE