# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs November 26, 2002

## STATE OF TENNESSEE v. HOMER FRANK BEAVERS

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 234439, 234602, 233535    Douglas A. Meyer, Judge**

---

**No. E2002-00781-CCA-R3-CD**
**March 26, 2003**

---

The appellant, Homer Frank Beavers, pled guilty in the Hamilton County Criminal Court to two counts of aggravated assault and one count of assault. The trial court sentenced the appellant as a standard Range I offender to a total effective sentence of five years incarceration in the Tennessee Department of Correction. The trial court denied the appellant's request for probation and the appellant appealed to this court. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Mike A. Little, Chattanooga, Tennessee, for the appellant, Homer Frank Beavers.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, District Attorney General; and Carl Huskins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On December 11, 2001, the appellant entered a guilty plea to two counts of aggravated assault, Class C felonies, and one count of assault, a Class A misdemeanor. As a result of the plea, the State dismissed a reckless endangerment charge against the appellant. The appellant's convictions stemmed from his actions during a high-speed car chase with police in the crowded streets of Chattanooga.

At the sentencing hearing, Corporal Ernest Martin with the Red Bank Police Department testified that on the day of the offenses, he was called to a Bi-Lo grocery store because the appellant was trying to pass a bad check. When Corporal Martin arrived at the Bi-Lo parking

lot, the appellant "took off" in his vehicle and Corporal Martin pursued. During the car chase, the appellant was consistently driving between seventy and ninety miles per hour on the streets and highways in Chattanooga. The chase occurred at 2:00 p.m. on a weekday while the streets were heavily congested. The appellant twice swerved to hit Corporal Martin's police car when the officer pulled along side the appellant. The appellant continued the chase after one of his tires blew out, driving on the rim. At the end of the chase, the appellant hit another police car, swerved and knocked over a utility pole, and crashed off the side of the road. Corporal Martin asserted that if he had not applied his brakes, the utility pole knocked over by the appellant would have fallen on his police car. The entire pursuit lasted twenty-five to thirty minutes.

Officer Scott Randolph with the Chattanooga Police Department also testified regarding the chase. Officer Randolph stated that the chase occurred while the streets were suffused with "bumper-to-bumper" traffic. Officer Randolph joined in the pursuit of the appellant and saw the appellant's vehicle hit a car on the interstate while repeatedly weaving from the outside lane to the inside lane. At one point during the chase, the appellant reached a speed of eighty miles per hour and, at this speed, swerved and deliberately "clipped" Officer Randolph's police cruiser. Soon thereafter, the appellant again swerved and ran into the officer's vehicle. The second time the appellant's vehicle struck Officer Randolph's vehicle, the appellant lost control of the Chevrolet Suburban he was driving, crossed three lanes of traffic, hit a utility pole, and traveled down an embankment.

Sergeant John Carter with the Chattanooga Police Department testified that he became involved in the chase at the end of his shift. He witnessed the appellant exit Highway 27 into the downtown area of Chattanooga at a speed of approximately seventy miles per hour and run several red lights without applying his brakes.

Sergeant Carter stated that he saw the appellant "rolling past me. I mean, in my twelve years of working and the ten years downtown, I hadn't seen a car go downtown that time of day that fast." Sergeant Carter believed he knew which route the appellant would take. Accordingly, he parked his police cruiser so as to block the road, anticipating that the appellant would stop. The officer got out of his vehicle and walked to a grassy area approximately thirty to forty feet from the vehicle. The appellant approached the parked vehicle, with other police vehicles in pursuit. However, the appellant did not stop. Instead, his vehicle "jump[ed] the curb," and he drove directly toward Sergeant Carter at a speed of approximately seventy or eighty miles per hour. Sergeant Carter fired his weapon "just to try to stop the threat of me getting killed." The officer then jumped out of the way of the appellant's speeding vehicle.

The appellant testified on his own behalf. He asserted that he lived in Atlanta, Georgia, where he has a wife and seven children. The appellant stated that he had been employed by Rentway Home Choice for slightly over one year and provided the sole financial support for his family, including his ailing eighty-five-year-old grandmother. His wife and two of his sons were also ill. The appellant testified that he had health insurance through his employer, which insurance would be discontinued if he were incarcerated. He was a high school graduate and worked fifty to sixty

hours per week. The appellant admitted that the instant offenses occurred while he was on probation for a theft offense in Georgia. He additionally admitted that he had a previous cocaine related conviction, for which conviction he had also received probation.

The appellant maintained that when police arrived at the Bi-Lo store he "took off" and he failed to stop because he was "scared." He acknowledged that his wife and two other passengers were in his vehicle during the chase. He also conceded that the chase ended only because he wrecked his vehicle. The appellant alleged that he did not intend to hit Officer Robinson, insisting that the officer struck the appellant's vehicle. The appellant acknowledged that he made a mistake and stated that he was sorry for his actions. The appellant stated that he had learned from his mistake and only wanted to take care of his family. He further asserted that probation would be a "blessing." The appellant proclaimed that he had changed since the time of the offenses, noting "I live my life every day by the Lord."

After considering the enhancement and mitigating factors, the trial court sentenced the appellant to five years incarceration for each of the aggravated assault convictions and eleven months and twenty-nine days for the assault conviction, with the sentences to be served concurrently. Without explanation, the trial court denied the appellant probation. The appellant timely appealed.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2002); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, we note that because the record reflects that the trial court did not consider the sentencing principles and because the trial court did not specifically state for the record its reasons for denying probation, we will not review the trial court's determinations with a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Initially, we recognize that an appellant is eligible for probation if the sentence actually imposed is eight years or less. See Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant is a standard Range I offender convicted of Class C felonies; therefore, he is presumed to be a favorable candidate for alternative sentencing. However, the appellant is entitled to no presumption regarding his class A misdemeanor sentence. See State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Regardless, the presumption in favor of alternative sentencing may be rebutted by "'evidence to the contrary.'" State v. Zeolia, 928

S.W.2d 457, 461 (Tenn. Crim. App. 1996). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Zeolia, 928 S.W.2d at 461.

First, we conclude that to grant the appellant probation in this case would depreciate the seriousness of the offense. This court has previously stated that the nature and circumstances underlying the criminal conduct may alone give rise to the denial of probation. See Tenn. Code Ann. § 40-35-210(b)(4); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). When imposing confinement based upon the seriousness of the offense, the trial court must first determine if "'the circumstances of the offense[s] as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" Zeolia, 928 S.W.2d at 462 (quoting State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)). The appellant, fleeing a crime, engaged police in a high speed car chase that lasted nearly thirty minutes and occurred in "bumper-to-bumper" traffic in downtown Chattanooga. The appellant's wife and two other passengers were in the appellant's vehicle at the time of the chase. The appellant continued to flee even after his tire blew out, flinging rubber onto the windshield of Officer Robinson's vehicle. The appellant endangered many lives with his reckless driving. Accordingly, denial of probation is appropriate on this basis. See State v. Melissa Stearns, No. M1999-1826-CCA-R3-CD, 2000 WL 1358632, at *3 (Tenn. Crim. App. at Nashville, Sept. 20, 2000); State v. Carol L. Hughes, No. 01C01-9903-CC-00097, 2000 WL 59913, at *3 (Tenn. Crim. App. at Nashville, Jan. 25, 2000).

Additionally, the record reflects that measures less restrictive than confinement have recently been applied unsuccessfully to the appellant. See Zeolia, 928 S.W.2d at 461. The appellant's testimony at the sentencing hearing reflects that he previously served a probated sentence for a cocaine related offense. Furthermore, the appellant was on probation in Georgia when he committed the instant offenses. See State v. Green, 947 S.W.2d 186, 189 (Tenn. Crim. App. 1997); State v. Nora McFall, No. W1999-01086-CCA-R3-CD, 2000 WL 705296, at *3 (Tenn. Crim. App. at Jackson, May 26, 2000); State v. Victor Coleman, No. 02C01-9607-CC-00235, 1998 WL 92512, at *1 (Tenn. Crim. App. at Jackson, Mar. 5, 1998). Therefore, this basis for denying probation is also applicable.

We recognize that the trial court found that the appellant had genuine remorse, had some rehabilitative potential, and had accepted responsibility for his actions. We also acknowledge that the appellant made an impassioned plea for mercy based upon his family's need for his financial

support. However, notwithstanding his family's need for his financial support, based upon the seriousness of the offense and the appellant's unsuccessful forays into alternative sentencing, we cannot conclude that the trial court abused its discretion in denying the appellant probation.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


_____
NORMA McGEE OGLE, JUDGE