# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 20, 2009

## STATE OF TENNESSEE v. VIOLA DARLENE STEPHENS

**Direct Appeal from the Circuit Court for Franklin County**
**No. 18157    J. Curtis Smith, Judge**

---

**No. M2008-02847-CCA-R3-CD - Filed November 10, 2010**

---

Defendant, Viola Darlene Stephens, pled guilty to theft of property valued at less than $500, a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. The trial court sentenced her to eleven months, twenty-nine days for the theft conviction, to serve six months, and six months for driving on a revoked license, to be fully served in incarceration. The sentences were ordered to be served concurrently with each other. On appeal, Defendant contends that the trial court erred in not stating whether it had considered a sentence of community corrections. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Philip A. Condra, District Public Defender; Robert G. Morgan, Assistant Public Defender; and Vanessa King, Assistant Public Defender, Jasper, Tennessee, for the appellant, Viola Darlene Stephens.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin Ball, Assistant Attorney General; J. Michael Taylor, District Attorney General; William Copeland, Assistant District Attorney General; and Steve Blount, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the guilty plea submission hearing on August 28, 2008, the State offered the following factual basis in support of Defendant's plea:

> Your Honor, if we went to trial in this matter, our primary witnesses would come from employees at the Dollar General Store and the Winchester Police Department. We believe the testimony would come, first, from the Dollar General Store employees and they would testify they made observations of Ms. Stephens taking items out of the store without paying for them, and actually leaving in a particularly described vehicle with a particular license plate. They had immediately called the police. The police arrived after Ms. Stephens had left.
>
> As they were taking a report, the employees informed the officer that that particularly described vehicle with that license plate had actually pulled back in the parking lot and appeared she was coming back in with a couple of the items that had been taken. The officer ultimately observed that. He ultimately talked with Ms. Stephens. Ms. Stephens at that time denied she'd taken the items, but based on the proof presented, he ended up taking her in custody and going out and looking in the vehicle, and the remaining stolen items were found in her vehicle and they charged her with theft.
>
> As he was investigating that particular action, Your Honor, he ran her through dispatch and discovered that she was operating on a revoked license and because they saw her leave in a car and he saw her return in the car driving on public roads, he charged her with driving on revoked.

At the sentencing hearing, Defendant testified that on the day of the offenses, she had just been released from "rehab" and stopped by the Dollar General Store to purchase something to eat for herself and one of her sons. Defendant said that she did not have anywhere to stay until the following day, and she had hit "rock bottom." She testified that she has two sons, ages twenty-six and sixteen, and that another son died in 1991 when he was two and a half months old. Defendant testified that she no longer drives, and her oldest son takes her places "[w]hen he can." She said that a bus transports her and her younger son to doctor appointments. Defendant testified that she has been renting a house for almost a year, and she has a good landlord.

Defendant testified that she was married for seventeen years and then divorced. She moved to a Cumberland Place Apartment with her mother and had several cars stolen, and other things happened. Defendant testified that she was homeless at different times, and she began receiving treatment for mental illness at Centerstone around eight to ten years prior to the hearing. She stated that she now has monthly meetings with a social worker and a doctor at Centerstone, and they have diagnosed her as bipolar and having an anxiety disorder. Defendant testified that she and the social worker, Ms. Langley, have worked out a treatment plan, and she is participating in group therapy. She is also taking medication as part of her treatment, and she receives disability benefits. Defendant hoped to eventually be able to work "maybe 15 hours a week." She also attends Alcoholics Anonymous (AA) meetings.

Defendant admitted that she has misdemeanor convictions for four thefts, several DUIs, and forgery/ passing a forged instrument. She said that the convictions happened while she was "living on the road," and she received the forgery charge after she was robbed, and her car was stolen. She was on probation at the time, and went to prison for the revocation. Defendant testified that she is not using alcohol, marijuana or any other drugs.

## II. Analysis

In this appeal Defendant does not contest the length of her effective sentence. Neither does she specifically contest the length of incarceration. She has limited her issues on appeal to the argument that the trial court declined to consider her request for sentencing to community corrections.

When there is a challenge to the manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). The burden of showing that the sentence is improper is upon the appellant. *Id*. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id*. If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. *See* T.C.A.

§ 40-35-302(b). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. *See State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." T.C.A. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no sentence range. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court, however, must impose a specific sentence for a misdemeanor conviction consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. T.C.A. § 40-35-302(d); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of not greater than seventy-five percent to be served by the defendant before he or she is eligible for rehabilitative programs. T.C.A. § 40-35-302(b) and (d). Those convicted of a misdemeanor are not presumed eligible for alternative sentencing. *See State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); *State v. Robert Edward Joffe*, No. E2004-02926-CCA-R3-CD, 2006 WL 1288597, at *6 (Tenn. Crim. App., at Knoxville, May 11, 2006), *perm. app. denied*, (Tenn. Sept. 5, 2006). When a defendant challenges a misdemeanor sentence, this Court conducts a *de novo* review with a presumption that the trial court's determinations are correct. *Id*. § 40-35-401(d)

The purpose of the Community Correction Act is to:

(1) Establish a policy within the state to punish selected, **nonviolent felony offenders** in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders; and

(2) Establish a mechanism whereby state funds are granted to local governments and qualified private agencies to develop a range of front-end community based punishments for eligible offenders under this chapter.

-4-

T.C.A. § 40-36-103(1)-(2), *emphasis added*. A defendant is eligible for participation in a community corrections program if the defendant satisfies the following minimum eligibility criteria:

> 40-36-106. Eligible offenders. - (a)(1) An offender who meets **all** of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:
>
> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of **property-related, or drug/alcohol-related felony offenses** or **other felony offenses** not involving crimes against the person. . . ;
>
> (C) Persons who are convicted of **nonviolent felony offenses**;
>
> (D) Persons who are convicted of **felony offenses in which the use or possession of a weapon was not involved**;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> > (2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

*Id*. § 40-36-106(a), *emphasis added*. In the present case, Defendant was convicted of two **misdemeanors** rather than **felony** offenses. Because she does not satisfy all of the minimum criteria set forth in T.C.A. § 40-36-106 or the purpose of the Community Corrections Act, Defendant is not eligible for community corrections. Moreover, the misdemeanor sentencing statute does not authorize a trial court to place a defendant on community corrections. *See* T.C.A. § 40-35-302. Therefore, we conclude that the trial court did not err in failing to state whether community corrections may be applied to a misdemeanor sentence or whether it considered such a sentence for Defendant.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE