IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2006

**STATE OF TENNESSEE v. HEATH BALDWIN**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-03697     Carolyn Wade Blackett, Judge**

_____

**No. W2005-02906-CCA-R3-CD - Filed March 21, 2007**

_____

The defendant, Heath Baldwin, pled guilty to misdemeanor assault and received an agreed eleven month, twenty-nine day sentence with the manner of service to be determined by the trial court. Following a sentencing hearing, the court ordered that the defendant serve his sentence in confinement. On appeal, the defendant challenges the denial of an alternative sentence, specifically the denial of probation. After our review of the record and the parties' briefs, we affirm the judgment of the Shelby County Criminal Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David G. Hayes and John Everett Williams, JJ., joined.

Blake D. Ballin, Memphis, Tennessee, for the appellant, Heath Baldwin.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook and Tiffani Taylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

In May 2005, the defendant was indicted on one count of aggravated assault and one count of domestic assault. On September 23, 2005, he pled guilty to one count of misdemeanor assault for an agreed eleven month, twenty-nine day sentence with the manner of service to be determined by the trial court, and the domestic assault charge was dismissed. He also received a $500 fine. The facts giving rise to the defendant's charges were recited by the state at the guilty plea hearing as follows:

The victim, Mel[a]nie Hill, advised [investigating officers] that on December 12th, 2004 at approximately 7 a.m. she and the victim Massey Fry, her current boyfriend, were asleep at her home . . . . They were awakened by the [defendant] who was standing over her bed. [The defendant] snatched the victim Hill out of the bed and threw her to the floor. [The defendant] then kicked and punched the victim Massey Fry about the head, face, and ribs causing him to have a ruptured eardrum and bleeding from the ear. . . .

The defendant requested that he be considered for probation or other alternative sentence, and the court conducted a sentencing hearing on November 1 and December 16, 2005. At the first part of the sentencing hearing, held on November 1, 2005, the defendant testified that he was thirty years old, single, had no children, and his family accompanied him to court. The defendant stated that he had a high school diploma, graduated college from Williams Baptist College, and was working on his masters degree. He was currently a 5th grade English teacher at Weaver Elementary School in West Memphis, Arkansas, and had taught school for three years. The defendant acknowledged that he pled guilty to misdemeanor assault, a crime of violence, but he said that the school administrators, his co-workers, and his supervisors were aware of what was going on.

The defendant testified that in addition to teaching school, he also tutored children and stayed an hour after school on Wednesdays to allow the children to play sports. The defendant stated that his job as a teacher was very important to him, and he tried to help the children make good grades and learn to take school and life seriously. The defendant acknowledged that in the past he had been found guilty of another crime of violence, but he maintained that he had never exhibited any signs of violence toward his students.

The defendant admitted that he had a previous misdemeanor conviction for which he was placed on probation, and he violated his probation and had to spend forty-five days in jail. The defendant said that being in jail was an "awakening experience" and it showed him what it felt like to have his freedom taken away. The defendant also admitted that he had a case pending in General Sessions Court. The defendant testified that since he had been released from jail he had stayed out of trouble, and he started to see a counselor for anger management and his inability "to walk away whenever [he had] love spats or quarrels." He said that he was learning calming techniques and was making progress in therapy. When asked to tell the court why he was entitled to probation, the defendant responded that he had learned from being "locked up," and that he was sorry for his actions and regretted what he had done.

On cross-examination, the defendant admitted that he was arrested for false imprisonment and domestic assault-bodily harm in May 2005, and for violation of bail conditions and harassment in July 2005. The defendant also admitted that he was convicted of cruelty to animals when he was a teenager for killing a goose. The defendant acknowledged that in 2003 he was arrested for vandalism and assaulting his girlfriend. The defendant agreed that he had other arrests in his record for which the charges had been dismissed.

-2-

The defendant testified that at the time of the incident in this case he and his ex-girlfriend, Ms. Hill, had been broken up for two weeks, and he was in the process of moving his belongings out of her home. He said that on the day of the incident he did not see Ms. Hill's car in the parking lot so he did not realize she was home. When he walked in and saw Ms. Hill with Mr. Fry, he yelled at Mr. Fry and the men ended up in an altercation. The defendant said that he and Mr. Fry hit each other, but he admitted that he was the first aggressor. The defendant noted that Mr. Fry had a black eye before he hit him. The defendant acknowledged that he had only been in anger management therapy for three weeks even though the case had been pending for six months.

On examination by the court, the defendant said that he gained entry into the apartment that morning because his friend Scott was inside and let him in. The defendant recalled that when he saw Ms. Hill in bed with Mr. Fry he was jealous and upset that "[Ms. Hill] chose to move on that fast in [his] own bed." The defendant said that after the altercation ended he told Ms. Hill and Mr. Fry that he had made a bad decision and left. The defendant stated that he was willing to take full responsibility and pay the medical expenses for Mr. Fry's injuries.

At the second part of the sentencing hearing, held on December 16, 2005, Ms. Hill recalled that she woke up the morning of the incident, and the defendant grabbed her out of bed and started to fight with Mr. Fry. Ms. Hill stated that she did not feel that the defendant was trying to hurt her but only get her out of the way. Ms. Hill said that after the fight Mr. Fry told her that he was okay, and she noted that Mr. Fry had a black eye but from another altercation the previous weekend. Ms. Hill testified that Mr. Fry went snow skiing in Colorado five or six days after the fight with the defendant.

On cross-examination, Ms. Hill "vaguely" remembered giving a statement to police after the incident, and the prosecutor asked Ms. Hill about discrepancies between her statement and current testimony. Ms. Hill explained, however, that Mr. Fry and his family were present when she gave the statement and Mr. Fry wanted to be sure their stories matched. Ms. Hill admitted that she filed charges against the defendant in November 2003 for assaulting her.

At the conclusion of the hearing, the trial court sentenced the defendant as follows:

[Y]ou have had numerous of the same type of offenses all through your history, starting with the ducks that you told us about, you have charges of assault with women, you have this charge of assault with a man. My understanding is that you've already picked up new charges.

When the Court looks at that I do not see an individual who is willing to be rehabilitated, an individual who is remorseful for types of that [behavior] . . . I don't care that much about animals but even animals don't deserve to be hit. But I do care about human beings, and there is nothing that justifies a man beating up on a woman or a man for no reason.

-3-

I've heard your testimony, all of which was understand [sic] which I believe after I got on you about it, I got on you to tell the truth, you told the truth. And for the record what you told on this stand was the truth compared to what [Ms. Hill] told today [which] was totally untrue.

. . . [Ms. Hill] did nothing but perjure herself and, in fact, if I consider her testimony it would hurt you more than it would help you. So I'm totally disregarding her testimony, everything that she said.

But getting back to you, the very fact that you have picked up new charges this Court can't even justify placing you on split confinement.

Based upon that, based upon your testimony, based upon the seriousness of the crime, based upon the fact that you continue to beat up on people, to have these assault charges, my concern right now is to protect those innocent victims out there.

. . . .

Based upon all this[,] the Court is going to sentence you to 11 months and 29 days, $500 fine. . . .

## ANALYSIS

On appeal, the defendant argues that the state failed to rebut his presumed eligibility for an alternative sentence and argues that the trial court erred in denying his petition for probation.

Appellate review of a challenged sentence is a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In conducting our de novo review, this court must consider (1) the evidence received at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any applicable mitigating or enhancement factors; (7) any statements made by the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for

rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *See* Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. *See State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. *See State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, but the trial judge need not place findings of fact on the record. Tenn. Code Ann. § 40-35-302(d); *see State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Rather, the court must only avoid arbitrarily imposing incarceration. *Id.*

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. Tenn. Code Ann. § 40-35-303(a). While certain Class C, D, and E felony offenders are entitled to a presumption in favor of probation, *see* Tennessee Code Annotated section 40-35-102(6), a misdemeanor offender is entitled to no such presumption. *See State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); *see also State v. Robert Edward Joffe*, No. E2004-02926-CCA-R3-CD, 2006 WL 1288597, at *6 (Tenn. Crim. App., at Knoxville, May 11, 2006), *perm. app. denied* (Tenn. Sept. 5, 2006). In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. *See, e.g.*, *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). The defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b).

In determining whether a sentence of confinement is appropriate, trial courts should look to Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

Upon review, we first note that the defendant's assertion that the state did not present evidence to overcome his presumptive eligibility for an alternative sentence is without merit. As previously noted, a misdemeanor offender is not entitled to the statutory presumption regarding alternative sentencing. *See Williams*, 914 S.W.2d at 949; *see also State v. Kristine Kuhne*, E2000-02269-CCA-R3-CD, 2001 WL 1168196, at *3 (Tenn. Crim. App., Knoxville, Oct. 4, 2001). Second, the trial court's denial of probation did not exceed the wide latitude of flexibility given the trial court in misdemeanor sentencing. The evidence at the hearing established that the defendant received an alternative sentence as a teenager for killing a goose, and probation approximately a year before this offense for beating up his girlfriend. The defendant was still on probation when he committed the present assault. The court noted that the defendant had also picked up new charges during the pendency of this case. The court based its sentencing decision on the need to protect other innocent victims, and the defendant's lack of genuine remorse and desire to rehabilitate. While the defendant does have a steady work history and did start anger management classes a few weeks before the hearing, the record shows that the trial court considered the appropriate principles and imposed a sentence that was not arbitrary. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

Based on the aforementioned reasoning and authorities, we affirm the judgment of the Shelby County Criminal Court.

_____
J.C. McLIN, JUDGE

-6-