IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

## STATE OF TENNESSEE v. WILLIE PAUL WATSON

**Direct Appeal from the Circuit Court for Dyer County**
**No. C05-126      Lee Moore, Judge**

_____

**No. W2007-00209-CCA-R3-CD  - Filed November 1, 2007**

_____

The appellant, Willie Paul Watson, was convicted by a jury in the Dyer County Circuit Court of two counts of assault, and he received a total effective sentence of eleven months and twenty-nine days, suspended after service of ninety days.  On appeal, the appellant argues that the trial court should not have required him to serve ninety days of his sentence.  Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

James E. Lanier (on appeal) and Patrick McGill (at trial and on appeal), Dyersburg, Tennessee, for the appellant, Willie Paul Watson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The appellant was originally charged with the aggravated assault of Geraldine Maupin and the assault of Cheryl Dildine; however, following trial, the appellant was convicted of two counts of assault, a Class A misdemeanor.  Although the trial transcript was not included in the appellate record, at the sentencing hearing the trial court stated that during the assault Maupin was hit with a bottle of beer.  The State recounted that

> Ms. Dildine, a lady about half his size was assaulted on the throat and
> chest[] area. . . .  Both of these ladies were beaten to the point that

they lost consciousness. Ms. Maupin had glass imbedded in her head and in her arm, and to this day, if you will remember, she still has scars that relate[] to this incident. . . . He smashed a bottle across one victim's head, totally to unconsciousness. He stomped on the other lady's chest and throat until she was unconscious, so I say he was pretty luck[y] and so [were] they. Both of them could have died as a result of this.

At the sentencing hearing, Maupin testified that as a result of the assault she continues to have problems with her voice. She said that although she was outgoing prior to the assault, she has become less sociable. Maupin also said that her mother, Dildine, has become "very, very hermit like now" and is very reluctant to leave her house. Maupin explained that Dildine "shakes and her nerves are pretty shot. That's why she is very anti-social." Maupin asserted that she believed the appellant should get the "full penalty" for his crimes and that she believed the appellant needed emotional, social, and drug counseling. Maupin said that she had met the appellant a few times over the years, and he had never behaved like he did during the assault. Maupin stated that insurance covered all of the expenses relating to the assault except an ambulance bill for $578.

The State presented proof of the appellant's prior convictions: possession of cocaine, possession of marijuana, and contributing to the delinquency of a minor.

The appellant made an allocution at the sentencing hearing, saying that he was sorry about the "accident" and about "losing my temper like I did." The appellant also said that he was willing to pay Maupin's ambulance bill. The appellant maintained that the drugs involved in his previous conviction were not his; he had merely bought them for "this other girl." The court asked the appellant, "Are you telling me that none of the prior charges are you actually guilty?" The appellant responded, "No."

The appellant stated that he does not drink or go to clubs because he is being treated for diabetes. He said that his wife left their son with the appellant when the son was a year and a half old. The appellant maintained that he was the sole support of the household and that if he was not working then he was home with his son.

At the conclusion of the sentencing hearing, the court found that two enhancement factors applied to the appellant. First, the court found that the appellant had a history of prior criminal convictions. Second, the court found that the offenses were committed under circumstances where the risk for bodily injury was great. The court noted that the appellant "take[s] the same position on all [his] charges," namely he denies guilt. The court stated that the appellant does not

> accept responsibility for anything. Your defense in this case as I recall was self defense, and Mr. Watson, this [is] not a case of self defense. This was a case for some reason, we may not know the particular reason, you totally lost your temper and you popped this

girl – one lady with a bottle and did hit Ms. Dildine in the neck or on the chest with your feet.

The court found that alternative sentencing was not appropriate, largely because the appellant was not willing to accept responsibility for his actions. The court said, "Rehabilitation does not appear to [be] something that you will be particularly successful with."

For the assault of Maupin, the trial court sentenced the appellant to eleven months and twenty-nine days, with the sentence suspended after service of ninety days. For the assault of Dildine, the trial court sentenced the appellant to six months, with the sentence suspended after service of sixty days. The trial court further ordered that the sentences be served concurrently for a total effective sentence of eleven months and twenty-nine days, suspended after ninety days.

On appeal, the appellant "contends that he was arbitrarily sentenced to an effective ninety days and that the sentence was excessive under the circumstances." The appellant claims that the court failed to consider that he had apologized for the offenses and that he was a single parent who was the "sole provider for his son." The appellant argues that "the court should have fashioned a remedy that would allow the [appellant] to maintain a job and care for his son."

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169. However, in sentencing on misdemeanor convictions, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

Assault, as charged in the instant case, is a Class A misdemeanor. Tenn. Code Ann. § 39-13-101(a)(3) and (b) (2006). Generally, a misdemeanant is not entitled to a presumptive minimum sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). An individual convicted of a Class A misdemeanor may receive a statutory maximum sentence of eleven months and twenty-nine days. See Tenn. Code Ann. § 40-35-111(e)(1) (2006). The appellant does not argue

that the length of the sentences were improper. Instead, the appellant argues that his "ninety day sentence" was arbitrary and unfair; in other words, the appellant essentially contends that he should have received full probation.

The trial court has the authority to place a misdemeanant on probation either after service of a portion of the sentence in confinement or immediately after sentencing. Tenn. Code Ann. § 40-35-302(e)(1)(2) (2006). However, we note that, while certain Class C, D, or E offenders are entitled to a presumption in favor of probation, an offender is entitled to no such presumption regarding misdemeanor sentences. See State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Our supreme court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." Troutman, 979 S.W.2d at 274.

In the instant case, the trial court imposed a sentence of split confinement, which is an alternative sentence. See Tenn. Code Ann. § 40-35-306(a) (2006); State v. Williams, 52 S.W.3d 109, 120 (Tenn. Crim. App. 2001). However, "[t]he determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Therefore, an appellant seeking full probation bears the burden of establishing his suitability for full probation, regardless of whether he is entitled to the statutory presumption favoring alternative sentencing. Id.; see also Tenn. Code Ann. § 40-35-303(b) (2006). To prove his suitability, the appellant must establish that granting full probation will "'subserve the ends of justice and the best interest of both the public and the [appellant].'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court may consider the circumstances of the offense, the [appellant's] potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477.

Initially, we note that although the appellant contends on appeal "that he was arbitrarily sentenced to an effective ninety days and that the sentence was excessive under the circumstances," the appellant failed to include the trial transcript with the appellate record. This court has previously explained that

> a party complaining about a sentence has the burden of establishing that the trial court imposed an improper one. In this respect, failure to include a transcript of the trial makes it impossible for us to

-4-

conduct an appropriate de novo consideration of the case or to determine whether the trial court erred relative to its determinations which were based in any part on that evidence.

State v. Hayes, 894 S.W.2d 298, 300 (Tenn. Crim. App. 1994). Regardless, we are able, based upon the limited record before us, to address the appellant's concern.

In the instant case, the appellant contends on appeal that the trial court failed to consider that he had apologized for the offenses and that he was a single parent who was the "sole provider for his son." The appellant maintains that "the court should have fashioned a remedy that would allow the [appellant] to maintain a job and care for his son." All of the foregoing arguments were made at the sentencing hearing. However, the trial court found that the appellant did not accept guilt for his crimes, essentially disbelieving the appellant's claim of remorse. Moreover, the court noted that the appellant's version of events was incredulous. Failure to accept responsibility is a germane consideration for determining rehabilitative potential. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). The court determined rehabilitation would likely be unsuccessful, which is a valid concern in determining whether full probation is appropriate. Based upon the record before us, we conclude that the trial court did not err in refusing to grant full probation.

## III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE