IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 14, 2007

## STATE OF TENNESSEE v. CHARLES W. MCCALEB

**Appeal from the Circuit Court for Hickman County**
**No. 05-5138CR   Robbie T. Beal, Judge**

---

**No. M2007-01357-CCA-R3-CD - Filed April 23, 2008**

---

Appellant, Charles W. McCaleb, was indicted by the Hickman County Grand Jury for aggravated assault and assault.  After a jury trial, Appellant was acquitted of aggravated assault in Count One and convicted of assault by offensive touching in Count Two.  As a result, the trial court sentenced Appellant to six months in jail.  The trial court ordered Appellant to serve forty-five days in incarceration and the remainder of the sentence was suspended and Appellant was placed on probation.  On appeal, Appellant argues that the evidence was insufficient and that his sentence is excessive.  We affirm the judgment of the trial court because the evidence is sufficient to support the conviction for simple assault by offensive touching and the trial court properly sentenced Appellant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and JOHN EVERETT WILLIAMS, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee for the appellant, Charles W. McCaleb.

Robert E. Cooper, Jr., Attorney General & Reporter; Jennifer L. Smith, Assistant Attorney General, and Ron Davis, District Attorney General; and Michael J. Fahey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The events at issue herein took place during the mid-afternoon or early evening of July 9, 2005, in rural Hickman County, in an area called Swan Creek.  Gloria Stanfield and Jessica

Newcomb were waiting at the edge of the creek for Brian Cox, Ms. Stanfield's son, and his friend Rodney Scott to finish boating in their kayaks. The women were there to pick up the men and their kayaks.

While the women were waiting, Ms. Stanfield saw Barry Burlison, the seventeen-year-old victim, in this case, driving a four-wheeler along the roadway and trails between the water and Appellant's nearby home. Burlison had pulled up in his truck with a trailer on the back that carried the four-wheeler. "[H]e unloaded it, got on it, and started riding down the road." According to Ms. Stanfield, the victim was riding the four-wheeler "like anybody would . . . just up and down the road" at a "rather fast" pace. Ms. Stanfield did not think that the victim was being "reckless." The victim was stirring up the dust "because it was dusty."

Later, Ms. Stanfield saw Appellant drive up in his truck, coming in from the opposite direction. Appellant turned around and pulled his truck back to the corner of the fence, in a shaded area. Appellant stood outside of his truck holding a "very long stick" by his side. Ms. Stanfield was on the other side of the bridge and thought that Appellant looked "awfully mad." The victim continued to ride his four-wheeler. Ms. Stanfield then saw Appellant get into his truck and take off fast toward the victim, who was still riding the four-wheeler. It appeared that the victim saw Appellant coming, because the victim "got up on the side of the road in the weeds." Then, Ms. Stanfield saw Appellant "swerve[ ] to hit [the victim]." Appellant hit the victim hard enough to "knock" him off the four-wheeler. Appellant backed up and left immediately. Ms. Stanfield admitted that her view of the incident was somewhat obstructed by the amount of dust in the air.

Ms. Stanfield ran over to see if the victim was hurt. The victim was off the four-wheeler and had a "black" place on his face. Ms. Stanfield, Ms. Newcomb, Mr. Cox, and Mr. Scott helped the victim push his four-wheeler back up onto his trailer.

At that time, Appellant came back in a car and "started talking bad to [the victim] and asking him who was his daddy and does his daddy know he's acting like that." Then, Appellant "started slapping" the victim in the face. The victim did not fight back, but was "trying to get away" from Appellant. Eventually, some of Appellant's family members drove up, and the incident came to an end.

Brian Cox and Jessica Newcomb corroborated Ms. Stanfield's version of the events. They both testified that they observed Appellant swerve his truck to collide with the victim's four-wheeler. Further, they both stated that after the collision, Appellant left the scene, returning a few minutes later. When he returned, Appellant started choking and slapping at the victim.

The victim also testified at trial. The victim stated that he drove to the area near Appellant's property on the day of the incident to ride his four-wheeler. He had never been to that area before. He rode around for about "an hour or two," before deciding to load up his four-wheeler and go home. The victim did "one or two doughnuts" and stirred up some dust in the air. The victim saw Appellant driving his truck toward him, then Appellant "swerved over and hit [him] on the right side

of the road that [he] was on, and [he] swerved over, got over in the gully, and [Appellant] swerved over to hit [him]." As a result of the collision, the four-wheeler "spun . . all the way around" and ended up "sideways in the ditch." The victim's head was hurt, and he burned his arm on the muffler.

The victim then stated that Appellant left the scene. The victim was assisted by Ms. Stanfield and her family. Appellant came back a few minutes later at "got out [of his car] and . . . started yelling . . . and [Appellant] put his hands around [the victim's] neck and started . . . choking [him] and [Appellant] pushed [the victim] back." The victim tried to get away, but Appellant followed him and smacked him in the back of the head. Appellant left when some of his family members showed up on the scene.

*Defense Proof*

Appellant testified at trial that he and his family were swimming in the creek when Ms. Stanfield told him that she saw several people racing four-wheelers down the road. Appellant said that he would ask them to "slow down." Appellant said that he saw the victim coming in a "great big ball of dust" when he decided to get in his truck, ride up there, and stop him. Appellant stated that he was going "three to five miles an hour" when the victim came out of a "ball of dust" driving towards him. Appellant stopped in the middle of the road and the victim's "left-rear rubber tire" came into contact with Appellant's left-front bumper. Appellant heard the victim say, "Shew, golly." Appellant asked the victim if he was alright. The victim replied that he was not hurt and pulled off.

According to Appellant, he went back to his house and changed clothes. Then Appellant decided to drive back down to the creek to check on the victim. Appellant drove down there in his car and opened the door to get out. Appellant testified that the victim walked toward him "mouthing" and "cussing." The victim "got loud" with Appellant, and Appellant "got loud back at him." Appellant described the victim as "wobbling around on the gravel." Appellant reached out to grab the victim because he thought that the victim was going to fall over. Appellant claimed that he never actually laid his hands on the victim. Then Appellant stated that the victim left the scene. Similarly, Appellant's sons both testified that Appellant never touched the victim, that he only reached out to prevent him from falling down. Further, Appellant's sons stated that the victim initiated the verbal altercation with Appellant.

At the conclusion of the jury trial, the jury acquitted Appellant of aggravated assault in Count One and found Appellant guilty of simple assault by offensive touching in Count Two, a Class B misdemeanor. The trial court held a separate sentencing hearing. During that hearing the trial court sentenced Appellant to six months for the assault conviction. The trial court ordered Appellant to serve forty-five days in jail and suspended the remainder of the sentence. After the denial of a motion for new trial, Appellant filed a timely notice of appeal.

*Analysis*
*Sufficiency of the Evidence*

On appeal, Appellant argues that the evidence is insufficient to support his conviction for assault. Specifically, Appellant's position is that "the evidence in the record could not support a finding that [he] committed the offense of assault by an offensive touching" because the testimony was "conflicting concerning whether there was any physical contact" between he and the victim and "it is clear that the jury discredited the State's witnesses by their finding of not guilty as to the charge of aggravated assault." The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Appellant was convicted of assault by offensive touching. Assault is defined in Tennessee Code Annotated section 39-13-101(a)(3) as: "[i]ntentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." It is a Class B misdemeanor. T.C.A. § 39-13-101(b)(1).

Viewing the evidence in a light most favorable to the State, the evidence was sufficient to support a conviction for assault by offensive touching. The victim, Ms. Stanfield, her son, and Jessica Newcomb all testified that Appellant hit the victim on his four-wheeler then left the scene of the accident. They all stated that Appellant returned several minutes later and slapped the victim around while yelling at him. Even though Appellant's version of the story differed, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the jury. *Odom*, 928 S.W.2d at 23. Appellant is not entitled to relief on this issue.

*Sentencing*

Next, Appellant argues that the trial court erred by denying a "fully suspended" sentence. Specifically, Appellant argues that the trial court acted "arbitrarily" and did not consider appropriate sentencing principles. The State argues that the trial court properly sentenced Appellant.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *See* T.C.A. § 40-35-302(b); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. *See State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence.[1] *See State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. T.C.A. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. T.C.A. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. T.C.A. § 40-35-302(d).

A defendant is generally eligible for alternative sentencing if the sentence actually imposed is 10 years or less. T.C.A. § 40-35-303(a). While certain Class C, D and E felony offenders are entitled to a presumption in favor of probation, T.C.A. § 40-35-102(6), the defendant is entitled to no such presumption regarding his misdemeanor sentence. *See State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The misdemeanor sentencing statute also requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d); *Troutman*, 979 S.W.2d at 274. The defendant bears the burden of establishing suitability for probation. T.C.A. § 40-35-303(b); *Ashby*, 823 S.W.2d at 169.

---

[1]We note that this Court has held that "[t]he Sixth Amendment concerns expressed in *Blakely* [*v. Washington*, 542 U.S. 296 (2004)] are not implicated by [Tennessee's] misdemeanor sentencing scheme." *State v. Jeffery D. Hostetter*, No. M2003-02839-CCA-R3-CD, 2004 WL 3044895, at *9 (Tenn. Crim. App., at Nashville, Dec. 29, 2004), *perm. app. denied*, (Tenn., May 9, 2005).

In the case herein, the trial court conducted a separate sentencing hearing. At the hearing, the trial court heard testimony from Appellant, who asked the trial court to put him on probation. Appellant apologized to the court and the victim for the "inconvenience," but stated that he "didn't think [he] assaulted" the victim, he "talked to him just like if he'd been my son." The State introduced a judgment for a previous conviction for assault, from 1997, for which Appellant was sentenced to serve ninety days of an eleven month, twenty-nine day sentence. At the conclusion of the hearing, the trial court determined that the age of the victim and Appellant's prior conviction for assault justified a sentence of forty-five days in incarceration. However, the trial court gave weight in mitigation to the fact that Appellant's actions neither caused nor threatened serious bodily injury.

After reviewing the evidence, we conclude that the trial court did not exceed the "wide latitude of flexibility" afforded in misdemeanor sentencing. Thus, we determine that ordering the appellant to serve forty-five days of the six-month sentence in incarceration is consistent with the principles of the sentencing act. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE