IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015

## STATE OF TENNESSEE v. CLIFFORD ERIC MARSH

**Appeal from the Circuit Court for Warren County**
**No. 14-CR-275     Larry B. Stanley, Jr., Judge**

**No. M2015-00803-CCA-R3-CD – Filed January 28, 2016**

The Defendant, Clifford Eric Marsh, pleaded guilty to fourth offense driving on a revoked license, a Class A misdemeanor. *See* T.C.A. § 55-50-504 (2012). The trial court sentenced the Defendant to eleven months, twenty-nine days' confinement at 75% service. On appeal, the Defendant contends that the trial court erred by denying his request for alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

John P. Partin, District Public Defender, for the appellant, Clifford Eric Marsh.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Lisa S. Zavogiannis, District Attorney General; and Justin Walling, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

        The Defendant was indicted for theft of property valued at $1000 or more but less than $10,000 and fourth offense driving on a revoked license. Before the trial, the Defendant pleaded guilty to fourth offense driving on a revoked license. Although the plea agreement and the transcript of the guilty plea hearing are not contained in the appellate record, the record indicates that the length and manner of service of the sentence were to be determined by the trial court. The Defendant was acquitted of the theft charge following a jury trial.[1]

---

[1] We note that although the theft charge is not the subject of this appeal, the record does not contain a judgment document stating the disposition.

At the sentencing hearing, certified copies of the Defendant's previous convictions were received as exhibits. The record reflects that between 2002 and 2008, the Defendant was convicted of various felony offenses, which included aggravated burglary, aggravated assault, reckless endangerment, three counts of criminal simulation, two counts of identity theft, two counts of forgery, and two counts of theft. The prosecutor informed the trial court that at the time of the present offense, the Defendant was on probation for his third offense of driving on a revoked license and that the Defendant was serving the sentence imposed as a result of the probation violation.

The Defendant testified that he had made previous mistakes, that he admitted those mistakes, that he pleaded guilty in the cases resulting in previous convictions, and that he served time in prison for his mistakes. The Defendant said he unsuccessfully had attempted multiple times to obtain a restricted license. Relative to the present offense, he said he was driving his motorcycle home from the repair shop when he was stopped by the police. He admitted he was on probation at the time and said he only drove the motorcycle because the owner of the business was being evicted. The Defendant said he was told to pick up the motorcycle immediately because the person who owned the real property would "do away with it."

The Defendant testified that he began a new business, On-Site Property Solutions, LLC, two years previously and that his business involved property renovations and cleaning services. He discussed contracts his business had with an apartment complex and a hotel and said the contracts were executed before he pleaded guilty. He noted his customers had been patient pending the resolution of his probation violation and the present charge. The Defendant said he had a family for which to care. He said that at the time of his arrest, he had recently become eligible to have his license reinstated and had planned to obtain his license within the week. He said, though, that after his arrest, he had to use the money to post bond.

The Defendant testified that he realized he would not be eligible to obtain a license for another year but said that his wife and teenage daughter would drive him. The Defendant apologized for making a stupid decision and asked the court to consider all of his circumstances in determining his sentence.

The trial court stated that it saw positive changes in the Defendant's life, noting the Defendant's business and family obligations. The court said that it knew the third offense driving on a revoked license was the result of the Defendant's driving to or from work. The court stated that it "kind of underst[ood]." The court noted its "sympathy for people who get a revoked driver's license who maybe don't have a high paying job. I know it's very expensive." The court stated that although the fees and fines were expensive, "at some point

. . . , we all have to act like a grown-up." The court found that the Defendant's previous felony convictions were the result of incidents occurring in 2002, 2006, and 2008. The court found that the felony offenses of which the Defendant was convicted did not reflect someone who was "having a hard time" and was convicted of driving on a revoked license as a result of driving to work. The court found that the Defendant was on probation at the time of the present offense.

The trial court stated that it might have been prudent to allow the Defendant to continue working and providing for his family but that the Defendant's significant criminal history, his fourth driving on a revoked license conviction, and his serving a probationary sentence for third offense driving on a revoked license at the time of the fourth offense made it difficult for the court to sentence the Defendant to probation. The court stated that the time comes when a defendant must take responsibility for his actions and understand that if he makes another mistake, the outcome will not be favorable.

The trial court sentenced the Defendant to eleven months, twenty-nine days at 75% service. The court also ordered that the sentence be served consecutively to the sentence imposed for the probation violation. This appeal followed.

The Defendant contends that the trial court erred by requiring the Defendant to serve his sentence in confinement. He argues that he is a suitable candidate for probation. The State contends that the trial court did not abuse its discretion. We agree with the State.

Tennessee Code Annotated 40-35-302(b) (2014) governs misdemeanor sentencing, which requires a trial court to impose a specific sentence consistent with the purposes and principles of sentencing. Likewise, if a trial court orders a defendant to serve a sentence in confinement, the court must fix a percentage of the sentence a defendant is required to serve. *Id.* § 40-35-302(d). Although a trial court is not required to hold a sentencing hearing, the court must permit the parties to address "the length of any sentence and the manner in which the sentence is to be served." *Id.* § 40-35-302(a). Trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations, and defendants convicted of misdemeanors are not presumed eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *see State v. Combs*, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); *see also State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Likewise, defendants convicted of misdemeanors are not "entitled to the presumption of a minimum sentence." *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In determining the percentage of service for misdemeanors, a trial court must consider the purposes and principles of sentencing and the enhancement and mitigating factors and must not impose arbitrary incarceration. T.C.A. § 40-35-302(d); *see Troutman*, 979 S.W.2d at 274 (stating that "while the better practice is to make findings on the record when fixing a

percentage of a . . . sentence to be served in incarceration, a . . . court need only consider the principles of sentencing and enhancement and mitigating factors . . . to comply with the legislative mandates of the misdemeanor sentencing statute").

This court reviews challenges to sentences imposed for felony offenses relative to the manner of service within an appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). The same standard of review applies to questions related to probation or any other alternative sentence. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Although our supreme court has not considered whether the abuse of discretion with a presumption of reasonableness standard applies to misdemeanor sentencing determinations, it has stated that the standard "applies to all sentencing decisions," and this court has previously applied the standard to misdemeanor sentencing. *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014); *see State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at \*6-8 (Tenn. Crim. App. Mar. 14, 2013), *perm. app. denied* (Tenn. June 18, 2013); *State v. Christopher Dewayne Henson*, No. M2013-01285-CCA-R3-CD, 2015 WL 3473468, at \*5-6 (Tenn. Crim. App. June 2, 2015); *see also* T.C.A. § 40-35-401(d) (2014) (stating that all sentencing questions pursuant to Code section 40-35-401(a) are subject to the same standard of review).

Generally, compliance with the purposes and principles of sentencing requires a trial court to consider any evidence received at the trial and sentencing hearing, the presentence report, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see* T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see also* T.C.A. § 40-35-102 (2014).

The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

The record reflects that the trial court considered the appropriate purposes and principles of imposing a sentence of eleven months, twenty-nine days at 75% service. Although the Defendant's previous convictions occurred years before the present offense, we

note the Defendant had three previous convictions for driving on a revoked license and was serving his sentence relative to his third offense on probation at the time the present offense occurred. *See* T.C.A. §§ 40-35-103(1)(A), (C) (2012). The record reflects that the court considered the Defendant's owning a business and supporting his family but that it determined the Defendant's previous criminal history and his being on probation at the time of the offense outweighed any mitigating evidence. The Defendant knew he was not permitted to drive while his license was revoked but chose to drive nonetheless. The court's consideration of these various factors was not improper, and we conclude that the court did not abuse its discretion. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE