IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 7, 2021

## STATE OF TENNESSEE v. ROBERT SHANE COLE

**Appeal from the Circuit Court for Madison County**
**Nos. 20-117, 20-367    Kyle Atkins, Judge**

_____

### No. W2020-01675-CCA-R3-CD

_____

The Defendant, Robert Shane Cole, was convicted upon his guilty pleas to numerous offenses related to driving under the influence, driving on a revoked license, violation of the open container law, possession of drug paraphernalia and various drugs, violation of multiple driving-related offenses, and harassment.  The plea agreement did not contain provisions related to the length and manner of service of the sentences.  The trial court sentenced the Defendant to an effective sentence of five years, eleven months, and twenty-nine days, to be served.  On appeal, the Defendant contends that the trial court erred in denying his request for probation.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

George Morton Googe, District Public Defender; M. Todd Ridley, Assistant Public Defender – Appellate Division; and John D. Hamilton (at guilty plea and sentencing hearings), Assistant District Public Defender; for the appellant, Robert Shane Cole.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jody S. Pickens, District Attorney General; Andrew Coulum, April Knight, and Nina W. Seiler, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's offenses relate to events on July 25 and November 26, 2019.  The transcript of the guilty plea hearing has not been included in the record.  *See State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (stating that the appellant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court

relative to the issues raised on appeal); *see also* T.R.A.P. 24(b); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review[.]"). According to the affidavit of complaint for the Defendant's July 25, 2019 offenses, the following occurred:

On July 25, 2019 at approximately 6:50 pm deputies conducted a query TN tag B93014H through the TN Integrated Criminal Justice Portal as it was driving West on Highway 18. The query showed the vehicle information as well as a picture of the registered owner was [the Defendant] and that his license status was revoked. The driver of the vehicle was positively identified as the registered owner. A traffic stop was conducted and deputies made contact with [the Defendant. The Defendant] had possession of his revoked drivers license well beyond the 20 day grace period to surrender it and could not provide proof of insurance. Deputies observed multiple open beer cans in the passenger compartment. Deputies conducted a search of the vehicle and discovered 5 Adderall XR 20mg pills and 16 Acetaminophen/Oxycodone Hydrochloride pills in a white ibuprofen bottle near the driver cupholder. [The Defendant] was arrested and charged with the above offenses [No Proof of Insurance 55-12-139, Open Container 55-10-416, Possession of Schedule II with Intent (x2) 39-17-417, Driving on Revoked License 55-50-504, Possession of Revoked License 55-12-127]. He was transported to the Madison County CJC and released to corrections without incident. This did occur in Madison County.

The affidavit of complaint for November 26, 2019, states the following:

On November 26, 2019 at approximately 2245 hours, Deputies were dispatched . . . in regards to a disturbance being created by [the Defendant]. Upon arriving on scene and speaking with Samantha Tebbetts, [the Defendant's] ex-girlfriend, an individual . . . called Tebbetts phone. Tebbetts put the phone on speaker and identified the caller as [the Defendant]. Deputies were able to hear [the Defendant] state to wait and that he was coming up there with his whole crew to "tear the place up." Tebbetts stated that [the Defendant's] statement made her afraid for her safety. Deputies in the area spotted the black 2006 Honda Pilot bearing TN tag B9314H that [the Defendant] was reported to be driving, traveling east on Wilde Rd in front of the residence. Deputies initiated a traffic stop on the vehicle and identified the driver as [the Defendant]. Deputies took [the

Defendant] into custody and upon searching his person, found a clear glass pipe used to smoke methamphetamine in his left hip pocket. As Deputies retrieved the pipe, a clear plastic wrapper containing methamphetamine fell to the ground. The meth was found to weigh 0.74 grams. Found in the Honda were several opened cans of Budlight beer in the center console. Deputies noticed the scent of an alcoholic beverage coming from [the Defendant's] person, noticed that he had slurred speech, had glassy and bloodshot eyes, and was unsteady on his feet. MCSO Dispatch confirmed that this would be the [the Defendant's] 4th offense of DUI and 3rd offense of Driving While Revoked. He was last revoked out of Hardeman County for DUI on 01/26/2018. This occurred in Madison County.

The November 26, 2019 affidavit listed charges for harassment, fourth offense driving under the influence (DUI), violation of the open container law, third offense driving while license revoked, possession of drug paraphernalia, and possession of methamphetamine.

The plea agreement and the judgments reflect that the Defendant pleaded guilty to the following offenses occurring on July 25, 2019:

Driving While License Revoked, a Class B misdemeanor, T.C.A. § 55-50-504, two counts

Violation of the Open Container Law, a Class C misdemeanor, T.C.A. §55-10-416

Possession of a Schedule II Controlled Substance, a Class A misdemeanor, T.C.A. § 39-17-418, two counts

Display or Possession of a Cancelled, Revoked, Suspended or Fraudulently Altered Driver's License, a Class C misdemeanor, T.C.A. § 55-50-601(1)

Violation of the Financial Responsibility Law, a Class C misdemeanor, T.C.A. § 55-12-139

The plea agreement and the judgments also reflect that Defendant also pleaded guilty to the following offenses occurring on November 26, 2019:

DUI – first offense, a Class A misdemeanor, T.C.A. § 55-10-401

DUI – fifth offense, a Class D felony, T.C.A. § 55-10-401, merged with DUI – first offense

Driving While License Revoked, a Class B misdemeanor, T.C.A. § 55-50-504, two counts, merged

Harassment, a Class A misdemeanor, T.C.A. § 39-17-308

Possession of Methamphetamine, a Class A misdemeanor, T.C.A. § 39-17-434

Possession of Unlawful Drug Paraphernalia, a Class A misdemeanor, T.C.A. § 39-17-425

Violation of the Open Container Law, a Class C misdemeanor, T.C.A. § 55-10-416

The plea agreement did not include provisions regarding the length or manner of service of the sentences.

At the November 23, 2020 sentencing hearing, the presentence report was received as an exhibit and reflected the following: The forty-nine-year-old Defendant had a lengthy criminal history spanning his adult life. Many of the conviction offenses involved motor vehicles or intoxicants, or both. The Defendant had felony convictions for aggravated kidnapping and especially aggravated robbery, both committed at age eighteen. He had a prior conviction for domestic violence. His history of supervision reflected that he had repeatedly violated the terms of release on parole or probation. He obtained a GED certification during a previous period of incarceration. He reported alcohol and methamphetamine use until his arrest for the present offenses and stated he had also used narcotics for which he did not have a prescription. He reported that he drank "a six-pack per day" until he was arrested for the present offenses and that he had had past periods of abstinence from alcohol. He reported that he had two adult children and three adult stepchildren. He also reported child support obligations of $600 per month. He reported that he had worked for the same employer for three to four years, and the Defendant's mother advised the presentence investigator that an individual had called to inquire about when the Defendant would be available to return to work. The Defendant also had prior employment in the construction industry. The Strong-R Risk Assessment Tool reflected that the Defendant's risk of reoffending was "moderate."

A Department of Safety document listing the Defendant's prior convictions and driver's license status changes was received as an exhibit. A certified copy of the judgment for the Defendant's prior Texas DUI conviction was received as an exhibit.

Samantha Tebbetts testified that on November 26, 2019, the Defendant "kept coming to" her house. She said, "[A]t first he wasn't acting a fool" and wanted to talk to her. She said she told him that she did not want to talk and to leave. She said that the next time he came to her house, "he was trying to scream at" her and that he told her he was "going to kill [her] if he couldn't have [her]." She said that the Defendant left and that "we" called the authorities. She thought the Defendant returned two more times. Ms. Tebbetts said that the Defendant called her while the police were there, that she placed the call on the speaker on the instructions of the police, and that the Defendant stated he "was going to get his posse to come back and kill us." She said she had been terrified.

Ms. Tebbetts testified that she was afraid of the Defendant and that she did not want him around her. She was afraid that if the Defendant were released from jail, he would kill her. She said that if the Defendant were released, she would have to "be in hiding" due to her fear that the Defendant would kill her. She said that the Defendant had written her a letter from jail and that he had believed "the . . . order of protection was off." The letter was received as an exhibit. In the letter, the Defendant stated, "I'm sorry for what ever I did or said that night." He said he "got on the whiskey and more" after she told him she "was done" and that her "x was out there." The Defendant professed that he loved Ms. Tebbetts, that he had not meant to scare or hurt her, and that he wanted her forgiveness.

Ms. Tebbetts testified that she had applied for an order of protection and that the application had been dismissed. She said she failed to appear at the hearing on the application because she had thought the hearing date was one day after the correct hearing date. She said she had not applied again because the Defendant had been in jail. She said that a general sessions judge had issued a "no contact" order and that the Defendant should not have sent the letter to her.

The Defendant testified that he had been in jail for about 362 days and that he had pleaded guilty "blind" without an agreement as to sentencing. He acknowledged that he "maybe" had "a problem with alcohol" and that he had used drugs. He said that for the past fifteen years, he had worked as a pipe welder, pipe fitter, and millwright. He agreed that his present boss wanted him to come back to work and said he needed to be out of jail in order to work to pay child support and to get his "life back together." He said that he worked sixty hours per week and that he earned $1500 to $2000 per week. He agreed

that he paid $150 per week in child support and that he had two minor children, ages eleven and thirteen. He said he could live with his mother if he were granted an alternative sentence.

The Defendant testified that he thought the application for an order of protection was dismissed after he went to court but Ms. Tebbetts failed to appear. He said he wrote to her to apologize and that he now saw that he should not have written to her. He said that he would not bother her and that he "want[ed] nothing to do with her." He said, "We was both on drugs at the time."

The Defendant acknowledged that he had been on probation in Hardeman County for vandalism and violation of a restraining order when he was arrested for "this offense." He said the general sessions judge in the present case did not enter a no-contact order.

The trial court stated that it had considered the evidence, the presentence report, the principles of sentencing, the parties' arguments regarding sentencing alternatives, the nature and characteristics of the Defendant's criminal conduct, the evidence related to the mitigating and enhancement factors, the Defendant's statements on his own behalf, and the victim's testimony. The court found that the Defendant was a Range II offender. It also found that the Defendant's sentences should be enhanced based upon his previous history of criminal convictions in addition to those used to establish his sentencing range. *See* T.C.A. § 40-35-114(1) (2019). The court noted the Defendant's two previous violent felony convictions and "about 25 or 26 . . . misdemeanors." The court found that the Defendant committed the November 26, 2019 felony DUI offense while on bail for the July 25, 2019 offenses and that he committed all of the offenses while on probation for previous Hardeman County offenses. *See id.* at (13)(A), (C). The court found that the Defendant was entitled to mitigating weight based upon his "solid work history." *See id.* § 40-35-113(13) (2019). The court noted, as well, that consecutive sentencing was mandatory because the Defendant committed the felony DUI offense "while on parole or other release program." *See* Tenn. R. Crim. P. 32(c)(3)(A), (C).

The trial court found that the Defendant's moderate risk to reoffend, based upon the Strong-R Risk Assessment, weighed against granting probation. The court also found that the facts and circumstances of the offenses, the nature and characteristics of the criminal conduct, the Defendant's prior criminal history, and the Defendant's likelihood to reoffend weighed against granting probation. The court found that the Defendant's physical and mental conditions and his social history "probably weigh[ed] against probation." The court again noted that the Defendant committed the July 25, 2019, and possibly the November 26, 2019 offenses while on probation.

Regarding the Defendant's July 25, 2019 two convictions, the trial court merged the two convictions for driving while license revoked into a single judgment of conviction and sentenced him to serve six months at 75%. For violating the open container and financial responsibility laws, the court imposed a fine of $1 for each conviction. For possession of methamphetamine and possession of oxycodone, the court imposed sentences of eleven months, twenty-nine days for each conviction. For possession of a revoked driver's license, the court sentenced the Defendant to thirty days at 75%.

For the November 26, 2019 offenses, the trial court merged the DUI first offense and DUI fifth offense convictions into a single judgment of conviction and sentenced the Defendant to five years as a Range II offender, to be served at 35%. The court merged the two convictions of driving on a revoked license into a single judgment of conviction and sentenced the Defendant to six months at 75%. For harassment, possession of methamphetamine, and possession of drug paraphernalia, the court imposed a sentence of eleven months, twenty-nine days at 75% for each conviction. The court declined to impose a fine for the open container law conviction.

The trial court imposed the sentences for the November 26, 2019 offenses consecutively to the sentences for the July 25, 2019 offenses. The court revoked the Defendant's driving privileges for eight years and ordered him not to have any contact with the victim or any witnesses. This appeal followed.

The Defendant contends that the trial court abused its discretion in ordering him to serve his sentence, rather than granting an alternative sentence. The State responds that no abuse of discretion has been shown. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2019), -210 (2019); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2019).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

The Sentencing Reform Act provides:

(1)    Sentences involving confinement should be based on the following considerations:

(A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.* § 40-35-103(1)(A)-(C) (2019). If probation is denied solely on the basis of the circumstances of the offense, they "must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than probation. *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (citations omitted). This court has recognized, "This standard has essentially been codified in the first part of T.C.A. § 40-35-103(1)(B) which provides for confinement if it 'is necessary to avoid depreciating the seriousness of the offense.'" *Id.* at 375.

Tennessee Code Annotated 40-35-302(b) (2019) governs misdemeanor sentencing, which requires a trial court to impose a specific sentence consistent with the purposes and principles of the Sentencing Act. Likewise, if a trial court orders a defendant to serve a sentence in confinement, the court must fix a percentage of the sentence a defendant is required to serve. *Id.* § 40-35-302(d). Although a trial court is

not required to hold a sentencing hearing, the court must permit the parties to address "the length of any sentence and the manner in which the sentence is to be served." *Id.* § 40-35-302(a). Trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations, and defendants convicted of misdemeanors are not presumed eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *see State v. Combs*, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); *see also State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Likewise, "there is no presumptive minimum sentence provided by law for misdemeanors." *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). In determining the percentage of service for misdemeanors, a trial court must consider the purposes and principles of sentencing and the enhancement and mitigating factors and must not impose arbitrary incarceration. T.C.A. § 40-35-302(d); *see Troutman*, 979 S.W.2d at 274 (stating that "while the better practice is to make findings on the record when fixing a percentage of a . . . sentence to be served in incarceration, a . . . court need only consider the principles of sentencing and enhancement and mitigating factors . . . to comply with the legislative mandates of the misdemeanor sentencing statute").

As with felony sentencing, the "abuse of discretion with a 'presumption of reasonableness'" standard of review applies to questions related to probation or any other alternative sentence. *Caudle*, 388 S.W.3d at 278-79; *see Bise*, 380 S.W.3d at 708. Although our supreme court has not considered whether the abuse of discretion with a presumption of reasonableness standard applies to misdemeanor sentencing determinations, it has stated that the standard "applies to all sentencing decisions," and this court has previously applied the standard to misdemeanor sentencing. *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014); *see State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *6-8 (Tenn. Crim. App. Mar. 14, 2013), *perm. app. denied* (Tenn. June 18, 2013); *see also* T.C.A. § 40-35-401(d) (2019) (stating that all sentencing issues raised pursuant to Code section 40-35-401(a) are subject to the same standard of review).

Generally, compliance with the purposes and principles of sentencing in a misdemeanor case requires a trial court to consider any evidence received at the trial and at any sentencing hearing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the relevant statutory considerations. *See* T.C.A. §§ 40-35-102, -103, -210.

The Defendant argues that he, and the community, would be better served if he were allowed to serve his sentence on probation. He notes his consistent work history

and his compliance with his child support obligations. He acknowledges his drug and alcohol abuse issues and notes that they were likely involved in this "threatening interaction with Ms. Tebbetts." The Defendant notes that despite the numerous offenses involved in the present case, only one was a felony, and he had already served in excess of the 150-day mandatory minimum incarceration for the DUI felony. *See id*. § 55-10-402(a)(5)(A) (2020) (subsequently amended). He argues that probation coupled with drug and alcohol treatment would more effectively accomplish the principles and purposes of sentencing.

The State responds that the Defendant, a Range II offender who was being sentenced for a third felony, was not a favorable candidate for an alternative sentence. *See id.* § 40-35-102(6)(a). The State also argues that confinement was necessary to protect the public from the Defendant's long history of criminal conduct, that he had previously been given opportunities to serve sentences outside of incarceration, and that he had violated the terms of release.

The record reflects that the trial court was heavily influenced in its sentencing determination by the Defendant's extensive criminal history and his past failures on probation or parole. Indeed, the Defendant's criminal history is abysmal. Many of the present offenses related to the use of alcohol or drugs and to driving despite not having a valid license and while under the influence of an intoxicant. Both the present offenses and his prior offenses demonstrate a pattern of repeated unlawfulness and disregard for the rules of the road and the safety of himself and others. In addition, the Defendant was convicted of harassment, and he has a prior conviction for domestic abuse. The record reflects that his past interactions with the criminal justice system have not caused him to reform his conduct. In addition, he has been unsuccessful when given prior reprieves from incarcerative sentences.

Upon review, we conclude that the Defendant has failed to demonstrate that the trial court abused its discretion in denying probation and ordering him to serve his effective five year, eleven month, and twenty-nine-day sentence. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE